```
                  UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MASSACHUSETTS


                                  )
UNITED STATES OF AMERICA,         )
                                  )
         Plaintiff,               )
                                  )  Criminal Action
v.                                )  No. 1:21-cr-10056-AK-1
                                  )  Pages 1 to 17
JUSTIN CAPELL,                    )
                                  )
         Defendant.               )
                                  )


           BEFORE THE HONORABLE ANGEL KELLEY
              UNITED STATES DISTRICT JUDGE


                        SENTENCING



                    January 3, 2024
                      11:20 a.m.


        John J. Moakley United States Courthouse
                    Courtroom No. 8
                   One Courthouse Way
               Boston, Massachusetts 02210




                  Linda Walsh, RPR, CRR
                 Official Court Reporter
        John J. Moakley United States Courthouse
                   One Courthouse Way
              Boston, Massachusetts 02210
                 lwalshsteno@gmail.com
```

```
 1     APPEARANCES:

 2     On Behalf of the Government:

 3          UNITED STATES ATTORNEY'S OFFICE
            By: AUSA Mackenzie A. Queenin
 4              AUSA Benjamin Saltzman
            1 Courthouse Way, Suite 9200
 5          Boston, Massachusetts 02210
            617-748-3338
 6          mackenzie.queenin@usdoj.gov

 7
       On Behalf of the Defendant:
 8
            DEMISSIE & CHURCH
 9          By: Derege B. Demissie, Esq.
            929 Massachusetts Avenue
10          Cambridge, Massachusetts 02139
            617-354-3944
11          dd@demissiechurch.com

12          PAIK, BREWINGTON & DEAL, LLP
            By: Young Paik, Esq.
13          6 Beacon Street, Suite 305
            Boston, Massachusetts 02108
14          617-439-0150
            ypaik@pbdlaw.com
15

16

17

18

19

20

21

22              Proceedings reported and produced
                  by computer-aided stenography.
23

24

25
```

```
 1                    P R O C E E D I N G S
 2              THE CLERK:  All rise.
 3              THE COURT:  Good morning.  You can have a seat.
 4         Just give me a moment, Mr. Lara.
 5              THE CLERK:  Yes, Your Honor.
 6              (Pause.)
 7              THE COURT:  Okay.  I'm ready.  So you can call the
 8    case.
 9              THE CLERK:  Thank you, Your Honor.
10         The United States District Court for the District of
11    Massachusetts is now in session, the Honorable Angel Kelley
12    presiding.  Today is January 3rd, 2024.  Criminal Action
13    21-10056, United States of America versus Justin Capell will
14    now be heard before this Court.
15              THE COURT:  All right. Good morning, everyone.
16    Please state your appearances for the record.  Let's start with
17    the government.
18              MS. QUEENIN:  Good morning, Your Honor.  Mackenzie
19    Queenin on behalf of the United States.
20              MR. SALTZMAN:  Good morning, Your Honor.  Ben
21    Saltzman, also for the United States.
22              THE COURT:  Thank you.
23              MR. DEMISSIE:  Good morning, Your Honor.  Derege
24    Demissie for Justin Capell.
25              MR. PAIK:  Good morning, Your Honor.  Young Paik, also
```

```
   1   for Justin Capell.
   2              THE COURT:  All right.
   3              THE DEFENDANT:  Good morning, Your Honor.  Justin
   4   Capell.
   5              THE COURT:  Good morning to you, sir.
   6              Any family members here in support that need to be
   7   acknowledged?
   8              MR. DEMISSIE:  Mr. Capell's wife is here.
   9              THE COURT:  Thank you for coming.  I'm sure it means a
  10   lot to him.
  11              Probation, please.
  12              U.S. PROBATION:  Good morning, Your Honor.  Carol
  13   Patten for Probation.
  14              THE COURT:  All right. Thank you. So this case was
  15   reassigned to me.  Judge Zobel originally took the plea.  But
  16   because all of the papers were in order prior to today, I had
  17   enough time to review and consider what's ahead of us.
  18              So today we're scheduled for the sentencing hearing,
  19   and it was on March 10th, 2023, when the defendant pled guilty
  20   to conspiracy to commit visa fraud before Judge Zobel.
  21              I've had the opportunity to review the information,
  22   plea agreement, and sentencing memos, and to my knowledge, is
  23   there anything else that needs to be noted?
  24              MS. QUEENIN:  No, Your Honor.
  25              MR. DEMISSIE:  Nothing from the defense, Your Honor.
```

```
 1              THE COURT:  All right.  Nothing.
 2              Probation, was any information withheld from the
 3    presence report pursuant to Rule 32(d)(3)?
 4              U.S. PROBATION:  No, Your Honor.
 5              THE COURT:  Thank you.  And are the parties
 6    anticipating an evidentiary hearing?
 7              MS. QUEENIN:  No, Your Honor.
 8              MR. DEMISSIE:  No, Your Honor.
 9              THE COURT:  All right.  Attorney Demissie, am I
10    pronouncing your last name correctly?
11              MR. DEMISSIE:  Correct, Your Honor.
12              THE COURT:  Have you had an opportunity to review with
13    your client all the materials submitted in connection with this
14    sentencing?
15              MR. DEMISSIE:  Yes, I have, Your Honor.
16              THE COURT:  Mr. Capell, have you reviewed all of the
17    materials and have you discussed them with your attorney?
18              THE DEFENDANT:  Yes, Your Honor.
19              MR. PAIK:  And are you satisfied with the legal
20    representation that you've received from counsel?
21              THE DEFENDANT:  Yes, Your Honor.
22              THE COURT:  So let's see.  The PSR I've reviewed, and
23    I see that there were no objections to that.  Is there anything
24    that needs to be registered at this time?
25              MS. QUEENIN:  No, Your Honor, not from the government.
```

```
 1            MR. DEMISSIE:  Not from the defendant, Your Honor.
 2            THE COURT:  The PSR calculates the total offense level
 3   to be 15.  That is based upon Section 2X.1.1, which gave a base
 4   offense level of 11.  There was an addition of nine because the
 5   offense involved 100 or more documents, which gave an adjusted
 6   offense level of 20; with the timely acceptance of
 7   responsibility, that's minus three; with an additional minus
 8   two for 4C1.1 for a total of 15.  Any objections to that
 9   statement?
10            MS. QUEENIN:  No, Your Honor.
11            MR. DEMISSIE:  No, Your Honor.
12            THE COURT:  Thank you.  And as far as a criminal
13   history goes, he had no prior criminal history, and the score
14   is zero, placing the defendant in Category I; is that accurate?
15            MR. DEMISSIE:  Correct, Your Honor.
16            THE COURT:  All right.  So based upon an offense level
17   of 15 and a Criminal History Category of I, the possible
18   penalties are 18 to 24 months of incarceration, up to three
19   years of supervised release, and a fine between $7,500 to
20   $75,000 and $100 special assessment.  Are there any objections
21   to that statement?
22            MS. QUEENIN:  No, Your Honor.
23            MR. DEMISSIE:  No, Your Honor.
24            THE COURT:  And so I'll hear from the government.
25            MS. QUEENIN:  Thank you, Your Honor.
```

|  |  |
|---|---|
| 1 | The government's recommendation for sentencing here is |
| 2 | one year of probation as set forth in the papers filed on the |
| 3 | docket.  In the government's view, that sentence is sufficient |
| 4 | but not greater than necessary taking into account all of the |
| 11:24  5 | 3553(a) factors. |
| 6 | Your Honor, the crime here that was charged was visa |
| 7 | fraud conspiracy.  But at its core, it was an economic crime |
| 8 | that was fueled by greed, and in that sense, it's not different |
| 9 | from your other run-of-the-mill economic crimes based on the |
| 11:25 10 | fact that the main motivator of the crime was money.  And what |
| 11 | that means in the context of this investigation is fueling an |
| 12 | underpaid workforce through the use of visas that were not |
| 13 | legitimately obtained. |
| 14 | And in the case of this defendant, there is no |
| 11:25 15 | indication that he personally profited other than receiving his |
| 16 | salary from the visa fraud conspiracy.  He -- as far as we can |
| 17 | tell, he wasn't personally receiving any other type of economic |
| 18 | benefit aside from his salary.  And we know, Your Honor, that |
| 19 | based on his own admissions that he knew what he was doing was |
| 11:25 20 | wrong.  Abuse of the visa process disadvantages the entire |
| 21 | system as a whole, it cheapens the process.  And in the case of |
| 22 | H-2B visas where there is a limit on the number of visas that |
| 23 | can be issued, it disadvantages the system. |
| 24 | Nevertheless, this defendant promptly accepted |
| 11:26 25 | responsibility at the very outset of this investigation.  The |

8

```
         1   government is satisfied that this defendant, through that
         2   acceptance of responsibility, understands the gravity of his
         3   actions.  We don't have concerns for that reason about specific
         4   deterrence, and we believe that the one year probationary
11:26    5   sentence is appropriate for all of those reasons.
         6            THE COURT:  Okay.  Thank you.  Defense counsel.
         7            MR. DEMISSIE:  Thank you, Your Honor.
         8            Your Honor, we join the government's recommendation of
         9   one year probation based on the 3554(a) factors.  The context
11:26   10   of this case is, as the government stated, is very important,
        11   particularly for Mr. Capell, who is an employee of the company
        12   that was benefitting from the fraudulent scheme.
        13            This was a time where the company was engaged in
        14   facilitating training for thousands of kids who are playing
11:27   15   soccer throughout New England.  They had a shortage of coaches,
        16   and they found a way to bring coaches from overseas.  From
        17   Mr. Capell's point of view, initially this was something that
        18   would benefit thousands of children, but again, in that
        19   situation it was -- when he was given direction to perform
11:27   20   certain tasks, he did not resist and say this is not legal, we
        21   shouldn't be doing this.  He went along with it.
        22            The beneficiaries of the scheme were the owners of the
        23   company.  And as stated, he took responsibility from the
        24   beginning, early on, right after he received the target letter.
11:28   25   He accepted responsibility and he expressed remorse, which he
```

          1   continued to feel throughout the pendency of this case and up
          2   to now.
          3             This is a person who graduated from college, has a
          4   very supportive family, has been working in high positions in
    11:28 5   soccer-related, sport-related companies, rising to the level of
          6   chief operating officer.  He's currently working for Arocam
          7   Sports Incorporated where he's been working since 2021 as a
          8   process analyst.
          9             He is a very proud and very much involved father of
    11:28 10  two daughters, ages 11 and 8.  His wife, Kerri Capell, is here.
         11   She's been extremely supportive throughout the pendency of this
         12   charge.
         13             His conduct during the pendency of this case is
         14   nothing short of exemplary.  He followed every condition.  He
    11:29 15  managed to rehabilitate himself and obtain -- this was a very
         16   excruciatingly painful experience for him and his family.  He
         17   was able to pull himself together, obtain employment, and was
         18   able to support his family despite losing his job as a result
         19   of this charge and the investigation that followed.
    11:29 20            He's currently a contributing member of society, and
         21   he's able to provide financial support, emotional support to
         22   his family.
         23            He comes before the Court with no record whatsoever.
         24   And as we stated in our memorandum, the Court obviously is --
    11:30 25  under these circumstances not only appropriate but encouraged

|   |   |   |
|---|---|---|
|   | 1 | to consider probation as an alternative sentence for first-time |
|   | 2 | offenders, and Mr. Capell is the poster child for that kind of |
|   | 3 | consideration, having expressed remorse, having followed |
|   | 4 | through with every obligation that was imposed on him, and |
| 11:30 | 5 | accepting responsibility from early on before he was even |
|   | 6 | charged with any crime. |
|   | 7 | And for those reasons, I ask the Court to adopt the |
|   | 8 | joint recommendation that is being made both by the government |
|   | 9 | and the defense. |
| 11:31 | 10 | Thank you. |
|   | 11 | THE COURT:  Thank you.  Before I turn to your client, |
|   | 12 | let me just turn to Probation to find out a little bit more |
|   | 13 | about his performance while on pretrial. |
|   | 14 | U.S. PROBATION:  Your Honor, Mr. Capell has been in |
| 11:31 | 15 | compliance since he was released on conditions. |
|   | 16 | THE COURT:  Any issues at all? |
|   | 17 | U.S. PROBATION:  No issues at all. |
|   | 18 | THE COURT:  Okay.  All right.  Thank you very much. |
|   | 19 | Mr. Capell, you have a right to speak if you wish to. |
| 11:31 | 20 | So would you like to be heard? |
|   | 21 | THE DEFENDANT:  Please. |
|   | 22 | THE COURT:  Okay.  Counsel, would you just turn his |
|   | 23 | microphone toward him.  Thank you.  Very good.  You don't have |
|   | 24 | to lean over.  Just stand naturally.  It will pick you up. |
| 11:31 | 25 | THE DEFENDANT:  First of all, I want to apologize |

unreservedly to the U.S. Government, the court people, and most importantly, my family.  The thing I take most pride in in my life is the responsibility of being a dad, of being a father, and all I -- all I attempt to do in that role is teach my girls, teach my kids to make good decisions and do the right thing even when I failed at doing that, which causes me significant pain because of the significant pain that it has ultimately caused them, the uncertainty, the not knowing, the remorse.

Everything that I've experienced in the past four years has taken away from me being the person I want to be, being the dad that I want to be, the husband, the son, brother, uncle.  This has had more of an impact on them than I ever would have hoped for.

I accept full responsibility.  I have accepted full responsibility from the get-go.  It would be easy for me to blame other people, for me to point fingers, and I have not done that.  If I can come out of this with anything, it's that when you do make a mistake, that you have to take responsibility for that mistake and you have to take responsibility for your actions.

The consequences I've already suffered have been, again, more impact on my family.  I've missed funerals of my grandmother and my grandfather, my brother losing his job.  I haven't been able to leave the country.  And my entire family

```
     1   is still based in the U.K. and have come with its own set of
     2   difficulties.
     3             But, again, I am truly, truly sorry.  If I could
     4   change it, if I could take things back, I certainly would.  I
11:34 5   can't.  But what I can do is take this experience and use it as
     6   motivation to continue to try and be the best person I can be,
     7   to teach my kids to be the best person they can be, and to
     8   be -- get back to being the husband and the dad and friend that
     9   I -- that they all deserve.
11:35 10            THE COURT:  Thank you, sir.
    11            What I would like to do is take a brief recess, and
    12   I'll return with my decision.  All right.
    13            THE CLERK:  All rise.
    14            (Recess taken from 11:35 to 11:46 a.m.)
11:46 15           THE CLERK:  All rise.
    16            THE COURT:  You may be seated.
    17            THE CLERK:  We're back on the record in the Capell
    18   matter.
    19            THE COURT:  Thank you for your indulgence.
11:47 20           In consideration of what a reasonable sentence would
    21   be, I must consider and have considered all the factors under
    22   18 U.S.C. Section 3553(a), the nature and circumstances of the
    23   offense, the defendant's personal and criminal history and
    24   relevant characteristics, the kinds of sentences available, the
11:47 25  kinds of sentence and the sentencing range established for the
```

category of offense committed by the category of defendant, any pertinent policy statement issued by the Sentencing Commission, the need to avoid unwarranted sentence disparities among similarly situated defendants, and the need to provide restitution to any victims, if there are any.

I've also considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner, if needed.

Before I may impose a variance, I must follow a three-step process that the Supreme Court established in Gall v. United States.

First, I must calculate the guidelines as I've already done.

Second, I must determine whether to apply any of the guideline departure policy statements to adjust the guideline range.

I have reviewed each of those policy statements and found that none precisely fit the individual needs in this case.

Third, I must consider all the sentencing factors in

        1    Section 3553(a), which I listed a few moments ago, and I have

        2    considered each of those factors in deciding whether to impose

        3    a variance.  The First Circuit has repeatedly held that I

        4    should give particular consideration to the nature and

11:48   5    circumstances of the offense and of the offender.  With all

        6    that I have considered, I'm persuaded by the parties to

        7    sentence Mr. Capell to probation.

        8            I was quite moved by his remorse that he expressed.

        9    Mr. Capell said doing the right thing is an important personal

11:49  10    value, one he promotes within his family -- within his own

       11    family.  He also said, when one makes a mistake, they should

       12    take responsibility, and that's what he's done and he did so

       13    immediately.

       14            Mr. Capell has been under the supervision of Pretrial

11:49  15    Services for quite some time and has performed well.  One year

       16    of probation is sufficient but not greater than necessary.  The

       17    additional year is sufficient punishment for the crime he

       18    committed.  Mr. Capell is not likely to reoffend given his age,

       19    his status as a first-time offender and the nonviolent nature

11:50  20    of his crime.

       21            Furthermore, the facts here indicate that Mr. Capell's

       22    conduct was done at the behest of others, and there is no

       23    indication that he himself benefitted from the illegal

       24    activity.

11:50  25            Sir, I want to share with you what a very wise person

1   once said, a person is more than their worst mistake that
2   they've made.  And so there's still time for you to restore the
3   honor to your family that I think that you value.
4              So if you will stand, sir, I will impose sentence.
5              Pursuant to the Sentencing Reform Act of 1984 and
6   having considered the sentencing factors enumerated at 18
7   U.S.C. Section 3553(a), it is the judgment of the Court that
8   the defendant, Justin Capell, is hereby placed on probation for
9   a term of one year.  No fine is imposed as the defendant does
10  not have the financial ability to pay a fine.
11             It is further ordered that the defendant shall pay to
12  the United States a special assessment of $100 which shall be
13  due immediately.
14             While under the Probation Office supervision,
15  defendant shall comply with the mandatory and standard terms of
16  conditions as outlined on page 25 of the PSR.  The sentence is
17  imposed for all the reasons previously stated and because the
18  Court believes that this sentence and all its components is
19  reasonable and is a sentence that is sufficient but not greater
20  than necessary to accomplish the goals of sentencing pursuant
21  to 18 U.S.C. Section 3553 in the Supreme Court's guidance.
22             Sir, let me inform you that you do have a right to
23  appeal your conviction and sentence within 14 days of entry of
24  judgment.  If you are unable to pay costs, you may ask for
25  permission to appeal in forma pauperis.  You should refer to

1  your plea agreement that you entered into because the
2  government limits your right of appeal pursuant to that plea
3  agreement.  However, if you still appeal on the ground that
4  your counsel was ineffective or that the prosecutor engaged in
11:52  5  misconduct, you may consider so.
6          This sentence is hereby imposed as stated with no
7  special conditions imposed.  Is there anything further,
8  Counsel, to address?
9          MS. QUEENIN:  Not from the government, Your Honor.
11:52 10  Thank you.
11          MR. DEMISSIE:  Nothing more from the defendant.  Thank
12  you, Your Honor.
13          THE DEFENDANT:  Thank you, Your Honor.
14          THE COURT:  Good luck to you, sir.  I wish you and
11:52 15  your family well.
16          THE DEFENDANT:  Thank you.
17          THE COURT:  Mr. Lara, is there anything?
18          THE CLERK:  Nothing further.  This matter is
19  adjourned.
11:52 20          (Adjourned at 11:52 a.m.)
21
22
23
24
25

```
1                CERTIFICATE OF OFFICIAL REPORTER
2
3            I, Linda Walsh, Registered Professional Reporter
4    and Certified Realtime Reporter, in and for the United States
5    District Court for the District of Massachusetts, do hereby
6    certify that the foregoing transcript is a true and correct
7    transcript of the stenographically reported proceedings held in
8    the above-entitled matter, to the best of my skill and ability.
9            Dated this 11th day of January, 2024.
10
11
12                      /s/ Linda Walsh
13                      Linda Walsh, RPR, CRR
14                      Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25
```